COMPAÑÍA POPULAR DE TRANSPORTE, INC., Petitioner, *v.* DISTRICT COURT OF BAYAMÓN, Respondent.

No. 13. Argued November 13, 1944.—Decided January 9, 1945.

366

*Santos P. Amadeo* and *Artemio P. Rodríguez* for petitioner.   *Dubón & Ochoteco* for intervener, plaintiff in the main action.

Mr. Justice De Jesús delivered the opinion of the court.

This case originated in the Municipal Court of Bayamón on a complaint filed by José Cumba against the petitioner. claiming payment of wages. The complainant alleged that he had been employed by the defendant, petitioner herein, from July 21, 1937, until July 21, 1940, as captain or master of the boats which the defendant used as a public carrier of passengers between San Juan and Cataño; that he had entered into a verbal contract with the defendant, ''whereby the complainant received . . . a weekly salary of $19.25 for seven days of work during the week, at a daily rate of $2.75 for nine hours of work''; that during all that time the defendant did not allow him nor did he enjoy a day of rest for every six days of work at full salary, as provided by law, but, on the contrary, that he worked the seven days of every week between the period from July 21, 1937, to July 21, 1940, with the exception of those days in which the complainant did not go to work, for which the defendant discounted from his salary an amount equal to that which the complainant would have received on a weekly basis if he had worked those days; that during all the time that the complainant worked

for the defendant, the days of rest to which he was entitled averaged 156 days which at a full salary of $2.75 daily, amounted to $429.00 which the defendant has refused to pay to the complainant, for which reason the latter prayed for judgment in that amount.

The defendant attacked the jurisdiction of the municipal court on the ground that the case set up by the complainant was not covered by the provisions of Act No. 10, 1917 (vol. II, p. 216), because it was not a claim for unpaid wages but a claim for compensation for having worked without pay the alleged days of rest. At the same time the defendant filed several demurrers for lack of jurisdiction, for insufficiency of the complaint to allege a cause of action, and because the complaint was ambiguous, unintelligible, and doubtful and it also filed the answer.

The municipal court dismissed the complaint on the demurrers interposed. The complainant appealed to the district court. The defendant insisted on its demurrers and the court dismissed them. The defendant thereupon instituted a certiorari proceeding, and this court, after liberally construing the complaint, held that it sufficiently alleged a cause of action. *Compañía Popular* v. *District Court,* **63 P.R.R.** 116, the case was remanded to the district court, the defendant amended its answer, reproduced the demurrers, challenged the constitutionality of the Act under which the complainant claimed compensation for the day of rest for every six days of work (Act No. 110 of 1937, Regular Session p. 258), and finally alleged that he earned under the contract, 26½ cents per hour from July 21, 1937, to January 11, 1940, and 27½ cents per hour from the latter date to July 21, 1940, and was paid double compensation for the ninth hour.

The case was heard on its merits and the district court found that the complainant was employed by the defendant on the basis of a weekly salary and adjudged the latter to pay him the amount of $115.12.

In order to review said judgment, this petition for certiorari under Act No. 32 of 1943 was filed. **Petitioner alleges** that the lower court erred: (1) in deciding that the complainant was employed by the defendant on a basis of a weekly salary; (2) in refusing to admit in evidence certain documentary proof offered by the defendant, marked "Exhibit A" and "Exhibit B," (3) in upholding the constitutionality of the Act.

Act No. 110 of 1937 (Laws of 1936–37, p. 258), effective immediately after its approval on May 13, 1937, provides in its pertinent part as follows:

"The dispositive part of Act No. 54, approved April 28, 1930, entitled 'An Act to amend Section 553 of the Penal Code, and for other purposes,' is hereby amended and reenacted to read as follows:

" 'Section 1.—That Section 553 of the Penal Code as amended August 9, 1913, March 28, 1914, November 23, 1917, and May 20, 1925, is hereby amended to read as follows:

" 'Section 553.—That all day Sunday, except when the 24th of December and the 1st and 5th of January fall on Sunday; on the first Monday in September (Labor Day) and the 4th of July; on all holidays from 12 a.m.; on all Saturdays from 9 p.m.; on all working days from 6 p.m., and on the 24th and 31st days of December, and the 5th day of January, of each year, from 10 p. m., commercial and industrial establishments shall remain closed to the public; and one hour after closing, no work of any kind shall be permitted the employees of said establishments, except those stated below:

" *       *       *       *       *       *       *

" '6. Public and quasi-public utilities and works of emergency necessary to prevent danger or considerable financial losses;

" *       *       *       *       *       *       *

" 'Section 2.—Employees and clerks of enterprises and establishments exempted by law, and who render services *on the basis of an annual, monthly, or weekly salary, or in any form other than for wages or piece-work at a fixed price,* shall be entitled to one day of rest for every six days of work, at full salary.' " (Italics ours.)

According to the above-copied · § 2, the employees and clerks of enterprises and establishments exempted by law

who are entitled to one day of rest at full salary, are those who render services on the basis of an annual, monthly or weekly salary, or in any form other than for wages or piece-work at a fixed salary. Therefore, the unit of time—year, month, week—which according to the contract serves as the basis to fix the salary, is the only standard which the Act provides for determining who are the employees or clerks of the enterprises exempted by law entitled to the day of rest. Having established this premise we must now determine which is the unit of time established in the contract of services for fixing the salary of the complainant. Disposing of this question the district court held that the contract of services entered between the complainant and the defendant was on the basis of a weekly salary and therefore covered by the Act which grants the day of rest at full salary to employees and clerks.[1]

---

[1] The reasoning of the district court in support of its theory is as follows:

"Although the defendant alleges that said salary was on the basis of 26½¢ the regular hour and of 53¢ the extra hour, from July 21, 1937 until January 11, 1940; or 27½¢ the regular hour and 55¢ the extra hour from January 12 to July 21, 1940, and, therefore, that the complainant did not receive a weekly, monthly, or yearly salary but an hourly wage, however, the latter, on the other hand, maintains that the salary was weekly, on the basis of an hourly rate only for the purpose of enabling the defendant to compute the double compensation due the complainant for the daily extra hour worked every day, as previously stated.

"In so far as this question is concerned, the court shall now settle the conflict of the evidence and weighing the same, it finds that the complainant was employed by the defendant on the basis of a weekly salary, and we reach this conclusion after considering all the prevailing circumstances in connection with the contract of his services and the rendering of the same to the defendant.

"But, even assuming that the complainant had not been employed at a weekly salary, but at an hourly wage rate, and that consequently the conclusion reached by this court as to the weekly nature of the claimant's salary was erroneous, the complainant would always be entitled to claim from his employer compensation for the seventh day of rest for every six days of work, as we shall presently show.

"The complainant's claim for unpaid wages is grounded on section 553 of the Penal Code as amended by Sec. 2 of Act No. 110 approved May 13, 1937, to wit: . . . .

"   *          *          *          *          *          *          *

"In order to apply the above-mentioned provision the following elements must exist:

· ■ Let us see whether this conclusion is supported by the pleadings or the evidence. It is not supported by the pleadings because as we have already seen while in the complaint it is alleged that the contract was on the basis of a weekly salary, in the answer the defendant alleges that the complainant had been employed on an hourly wage of 26½ cents from the beginning of the contract on July 21, 1937, until January 11, 1940, and of 27½ cents from this last date until July 21, 1940, paying him double compensation for the ninth hour.

The conclusion of the district court is not supported by the evidence either, because from the testimony of the com-

---

"1. That the claimant be an employee or clerk

"2. Of establishments exempted by law (which may remain open on Sundays and holidays, without being subject to certain hours for closing or stopping work),

"3. That said employees 'render services on the basis of an annual, monthly, or weekly salary, or in any form other than for wages or piece-work, at a fixed price.'

"That the complainant is an employee of the defendant and that the latter, by reason of being a public service enterprise is exempted from the provisions of section 553 of the Penal Code, has not been contested as admitted by defendant itself, there only remaining to be determined whether the complainant is covered by the third requirement copied above in regard to the nature of the salary.

"The defendant does not base its defense on the ground that complainant's compensation was on the basis of piece-work at a fixed price, but solely and exclusively on the ground that the compensation received by the claimant for his work as employee of defendant, was a daily wage (jornal) and not an annual, monthly or weekly salary. In our opinion the claimant (sic) it not giving application to each and every one of the statutory provisions, thus committing the error of considering that the annual, monthly or weekly salary is the only one which entitles a person to receive one day of rest at full salary for every six days of work. But such a construction is only partial, because it fails to embrace the full application of what the lawmaker provided, as we shall presently prove.

"The only ones who may not enjoy the benefit granted by the statute are those employees or clerks on the basis of wages or piece-work at a fixed price, but those other employees or clerks who render their services on the basis of (1) annual, (2) monthly, (3) weekly, salary (4) 'or in any form' other than for wages by the day or piece-work at a fixed price. are covered by the provisions of the statute.

"What did the lawmaker mean by the phrase 'or in any form other than'? The statute itself supplies the only logical construction which may be given to said phrase. 'In any form other than' implies the creation of a right estab-

plainant himself it appears that the unit of time which served as a basis for fixing the salary was the day, while the testimony of his witness Ramón Ríos and of the defendant's witness, Ladislao Córdoba, show that said unit of time was the hour, that is, at 26½ cents per hour from July 21, 1937, to January 11, 1940, and at 27½ cents per hour from this last date to July 21, 1940.

The testimony of the complainant was as follows:

"Q. But the compensation for your work, at what rate was it?— A. Recently, $2.75 for nine hours.

---

lished by said Act in favor of those employees or clerks who did not work at an annual, monthly or weekly salary, nor at a daily wage rate or piece-work at a fixed price.

"In view of the foregoing, the controversy is reduced to this: Did the complainant receive a daily wage from the defendant in payment of his services as captain of his boats?

"    *    *    *    *    *    *    *

"The meaning of 'piece-work at a fixed price,' is found in section 1840 of the Civil Code (1930 ed.), but not so of 'daily wage' (*jornal*).

"It has been repeatedly held that salary and daily wage (*jornal*) are synonyms, Alcubilla, volume VIII, p. 534, (1894 ed.); *Enciclopedia Jurídica Española*, volume XIX, p. 941; Bouvier's Law Dictionary, vol. 3, p. 2983; 3 L.R.A. 644.

"In our social legislation, and in so far as our search has revealed, we have not been able to find a specific definition for salary and daily wage, yet we did find various meanings for 'employee' and 'worker.' (See Act No. 73 of May 4, 1931; Act No. 17 of April 5, 1937; and Act No. 10 of November 14, 1917, providing for the proceeding in case of claims of workmen and employees, which contain the definition of 'worker' and 'employee.')

"There is no doubt that the employee holds a rank or position superior to that of the workman; permanency in the services rendered; greater experience and responsibility to a higher degree than the workman, from which arise his administrative and executive powers.

"    *    *    *    *    *    *

"To accept defendant's contention to the effect that because the complainant received his salary on the basis of an hourly wage rate [he was a daily worker], we would amount to sanctioning a clever way of violating the law by making an 'employee' a laborer on a daily wage (*jornalero*) according to the grammatical and ordinary meaning of these two terms. Any construction applied to the statute under discussion, which tends to destroy its social purpose of reserving human energy for the good of the State by granting certain rights to employees and clerk engaged in continuous work in the enterprises and establishments exempted by law, sould be rejected and it should not be tolerated that those who are protected by the law itself be deprived of their valuable rest; . . ."

"Q. Was it per day or per week?—A. Per week.

"Q. Did you then work on a daily or on a weekly basis?—A. You must understand that I worked nine hours a day and the computation is made of days per week.

"Q. That does not answer my question. Was your salary on a daily, hourly, or weekly basis?—A. *Daily*.

"Q. On a day of how many hours?—A. Of *nine hours*.

"Q. Then, if the basic rate was for a day of nine hours, why were you paid double compensation for the ninth hour?—A. Because there is a law which forbids to work more than eight hours.

"Q. Perfectly well. Then, how were you paid for the ninth hour?—A. Double compensation.

"Q. How was that rate figured out?—A. At the rate of 26½ cents, it amounted to 53 cents." (Italics hours.)

We quote from the testimony of Ramón Ríos, who also worked as captain of defendant's boats:

"Q. And at what rate were those hours which you did not work discounted from your salary?—A. It all depends: if they pay me a quarter they discount me a quarter.

"Q. Then the company fixed a certain rate per hour, is not that true in this case?—A. No, sir.

"Q. Is it not true that the company fixed a certain amount per hour and that at the end of each week they paid you and the other employees who had worked during that week?—A. According to the days which we have worked.

"Q. And according to the hours?—A. Yes, sir.

"Q. *And was it an amount which had been fixed by the hour*, is not that true?—A. *Yes*." (Italics hours.)

And Ladislao Córdoba, manager of the company testified:

"Q. What was the agreement with the employees in regard to their compensation between July 20, 1937 and July 21, 1940? —A. *For hours worked*.

"⁎        ⁎        ⁎        ⁎        ⁎        ⁎        ⁎

". . . When did you make that agreement as to the salary or compensation of the employees?—A. The agreement was made the last time that the employees protested: in 1933, when I began as manager of the company.

"Q. And then, what was the agreement?—A. *The salaries were fixed by the hour*.

"" ※      ※      ※      ※      ※      ※      ※

"Q. And what were the salaries fixed in that agreement?—A. Twenty-six and a half cents for the masters and motormen of the launches." (Italics ours.)

An examination of complainant's exhibit 1, which is at the same time defendant's exhibit 1,[2] strengthens our conclusion to the effect that the complainant did not **work** on the basis of a weekly salary. The exhibit shows that the contract was on the basis of an hourly wage and that when the complainant worked nine hours in one day he received double compensation for the ninth hour. It also shows that in order to fix the salary paid to the workman every Saturday, the hours worked each day were added computing as double the ninth hour which he might have worked on a day and that sum was multiplied by the agreed rate already mentioned. It also appears from the exhibit that on very few occasions the complainant received the same weekly amount as compensation for his work which shows that the salary was not on a weekly basis.

From the evidence of the complainant as well as from that of the defendant, it may be rationally inferred that the unit of time established by the contracting parties to fix complainant's salary was hourly, that is, at the rate of 26½ cents per hour from July 21, 1937, to January 11, 1940, and thereafter at 27½ cents per hour. The fact that payment was made every Saturday does not mean that the salary had been agreed on a weekly basis. Nor is the basic rate affected by the fact that the employment was continuous and permanent or that the nature of the work required certain skill or experience on the part of the workman or employee. As to this particular it seems worthy of notice that the decrees of the Minimum Wage Board fixing the minimum

---

[2] It consists of a synoptic table taken from defendant's books showing a relation of the number of hours worked by the complainant each day of every week and the weekly compensation paid to him from the day he began to work as captain on July 21, 1937, until July 18, 1940.

wages for workmen or employees in the sugar industry fixed for the agricultural class—who as a general rule are not skilled laborers—a certain rate per day of eight working hours for certain laborers and another rate for days of seven working hours for the other kind of laborers, while in fixing the wages for workmen or employees in the industrial class —who are mostly skilled laborers—they fixed an hourly rate for each kind of work. That is, for agricultural laborers the unit of time was the day of eight or seven hours, as the case might be, while for the industrial laborers, the unit of time was the hour. The employees of both classes receive their pay at the end of the week, and no one would contend that because the whole amount of their salaries is paid at the end of every week, said laborers render services on the basis of a weekly salary.

It having been established that the salary of the complainant was fixed on the basis of a certain rate per working hour, and even conceding, for the sake of argument, that it had been fixed on the basis of a certain rate per day, we must now determine whether the complainant is one of the workmen entitled to one day of rest at full salary for every six days of work.

As we have already seen, the law grants the day of rest to employees and clerks who render services on the basis of an annual, monthly, or weekly salary or in any form other than for wages by the day or piecework, at a fixed price. The law expressly denies the right of one day of rest to those employees who work for wages by the day. Although the term "daily wages" (*jornal*) is not defined in Act No. 110, its meaning has been perfectly defined in the legal and ordinary language. Escriche, in his *Diccionario de Legislación y Jurisprudencia* defines it as "the compensation earned by a laborer for a full day's work." It is likewise defined in the *Diccionario de la Academia Española* and in the *Diccionario Enciclopédico Hispanoamericano*. Therefore, the employees and clerks who render services at a daily wage

rate are not included among those who are entitled to one day of rest. The lower court maintains that even if the contract of the complainant were at an hourly wage rate his case would fall within the phrase "or in any form other than" which appears in § 2 of the Act and therefore that he is entitled to the day of rest. We do not agree with the opinion of the lower court as to this matter. It seems clear that if those who render services at a daily wage rate are not entitled to that privilege, neither are those who work on an hourly basis the hour being but a fraction of one working day. It may be easily conceived that the phrase "or in any form other than for wages or piecework at a fixed price," refers, as maintained by defendant's attorneys, to periods longer than seven days—fortnights, quarterly, etc.— within which period work may be done for six consecutive days. That this is so appears from the fact that when the periods for which the day of rest is granted are enumerated in the law, the week appears in the last place and the day is expressly excluded.

The conclusion which we have reached makes it unnecessary to enter into a discussion of the other two errors assigned by the defendant-appellant.

For the reasons stated the judgment appealed from must be set aside and the case remanded to the lower court in order that the latter may render judgment dismissing the complaint.